## JONATHAN DARLING v. CHARLES RODGERS.

1. FENCE LAW—*Ch.* 40, *Gen. Stat.* 1868, *construed.* The "act in relation to fences," passed in 1868, declares what shall constitute a legal and sufficient fence, and requires all fields and inclosures to be inclosed therewith; and said act so far modifies the common law that no action will lie for injuries done on real estate by trespassing cattle unless such real estate is inclosed with a sufficient fence.

2. CONSTITUTIONAL LAW—*General Laws must have a "uniform operation."* All laws of a general nature must have, by force of the constitutional provision, a uniform operation throughout the entire State. Neither the legislature nor the courts have power to limit the operation of any general law to any particular county, district, or locality.

3. HERD LAW—*Ch.* 115, *Laws of* 1870, *unconstitutional and void.* Chapter 115 of the Laws of 1870, entitled "An act to provide for a herd law in the counties of Saline, Ottawa, Washington, Cloud, Cherokee, and McPherson," is in conflict with the first clause of Sec. 17 of Art. 2, of the constitution, which provides that all laws of a general nature shall have a uniform operation throughout the State, and is void.

*Error from Saline District Court.*

CHAPTER 115 of the Laws of 1870, was approved February 25th, and was published March 3d, 1870. Its title designates it as an act to provide a "herd law" for six counties, Saline, Ottawa, Washington, Cloud, Cherokee, and McPherson. The first section *exempts* the counties named from the provisions of the general "fence law" for five years; § 2 prescribes as a rule, that if the owner of stock of any description shall allow the same to trespass upon the premises of another person such owner shall be liable in damages for any injury sustained by reason of the trespass; § 3 gives the person injured a lien upon the trespassing stock for all damages, and costs and expenses; § 4 gives justices of the peace exclusive original jurisdiction in all cases, without regard to the

amount of damages claimed; § 5 authorizes the people of any of the counties named to *set aside* the act by vote of a majority of the legal electors at any general or township election; § 6 declares that the words " crops " and " property " shall not be held to include growing wild grass; and § 7 prescribes the time when the act shall go into operation. The act contains no provision for " herding " cattle, or stock; nor does it authorize any board or tribunal to prescribe any rules or make any order therefor.

*Charles Rodgers*, defendant in error, brought suit before a justice of the peace of Saline county, against *Darling*, to recover damages committed by *Darling's* horses and mules, in the month of June, 1870, to the growing crops of the plaintiff. The justice gave judgment in favor of *Darling*, and *Rodgers* appealed to the district court. To the amended petition *Darling* answered, that "at the time and place mentioned his (defendant's) horses and mules, going at large and unattended, casually, and without the fault of the defendant, strayed from the land of the defendant and went upon the land of the plaintiff, there being at the time no fence or other obstruction upon or around the said premises to prevent or hinder the said animals from entering upon the same," etc. To this answer *Rodgers* demurred, " for that said answer does not state facts sufficient to constitute a defense herein." The court sustained the demurrer, and *Darling* excepted. Judgment was given in favor of *Rodgers* for $25, and costs of suit. Motion for new trial overruled, and *Darling* brings the case here on error.

*J. G. Mohler*, for plaintiff in error:

1. If the law, as it now stands, does not require a party to have a fence inclosing his lands, before he can recover

38

for an ordinary trespass, then it is admitted that the judgment of the court below is correct.

The fence law of 1868 requires that " all fields and inclosures shall be inclosed with a fence sufficiently close," etc., describing various kinds of fences. Gen. Stat., p. 486, § 1.

Section 4, of the same act provides that " Fences of the " sufficiency aforesaid, * * * and constructions which " shall be equivalent thereto, * * * shall be deemed " legal and sufficient fences."

Other sections of said Fence Act provide for the assessment and recovery of damages, but an essential prerequisite is, that the party claiming damages shall have complied with the provisions of the act in relation to fences, and surrounded his inclosures with a lawful fence; §§ 27, 28, 30, 33.

The truth of the facts alleged in the answer of the defendant below not being controverted but admitted, there is but one statute under which plaintiff below can recover, if at all, namely, ch. 115, Laws of 1870, commonly known as the "Herd Law."

2. Is said ch. 115 constitutional? We claim that it is void and of no force or effect whatever, for the following reasons:

It is no enactment at all, its passage not being a rightful exercise of legislative authority. It is neither the enactment of a new law, nor the repeal nor amendment of an old one. It merely provides that the six counties named "shall be *exempt* from the provisions" of the general fence law "for the period of five years." Mr. Sedgwick (Constitutional Law, p. 177,) uses the following language: "A statute which dispenses in favor of some particular individual, with the general rules governing similar cases, does not come within the rightful

attributes of legislative power, and is not to be regarded as a law." This rule is approved by the supreme court of this State, in *Commissioners of Shawnee Co. v. Carter*, 2 Kas., 115. See also, 2 Bouv. L. Dic., title, " Legislative Power." Also, 1 id., titles, " Exemption," and " Exempt." 1 Ohio St., 77, 578; Cooley Const. Lim., 390.

Said ch. 115 does not alter any law, because the altering of a law would be equivalent to an amendment, and the manner of amendment is distinctly provided for in the Constitution, § 16, Art. 2. Nor does it repeal any law, for " repeals by implication are not favored." Sedgw. Stat. and Const. Law, 127; 1 Wis., 525; 1 Ohio St., 21. And the legislature does not in *express* terms repeal any law in its enactment of the " Herd Law."

The provision of the statute regulating fences, ch. 40, Gen. Stat., p. 486, provides what shall be deemed a legal and sufficient fence, not only in Shawnee county, but in every other county of the State, and for the recovery of damages for trespass to lands, inclosed as provided for in said act. Now, suppose said ch. 40 contained a saving clause or proviso, to the effect that the said act should not be held to apply to the counties of Saline, Ottawa, Washington, Cloud, Cherokee, and McPherson; what would be the effect of such a saving clause in the body of the act itself? The constitution provides, § 17, art. 2, "All laws of a general nature shall have a uniform operation throughout the State." It will not be doubted but that the " fence act" is a law of a general nature, and therefore it must " have a uniform operation throughout the State." A proviso of the character indicated, being " a saving clause * * * directly repugnant to the provisions or body of the act," and " one that cannot stand without the rendering the act inconsistent and destructive of itself, is to be rejected." Sedgw. Stat. and Const. Law,

60. The legislature not having the power and authority to enact such proviso to a law when enacted, it certainly cannot with any reason be urged that the legislature can enact a proviso or saving clause to a statute long after the statute has become a law. 6 Ohio St., 269; 5 Iowa, 497.

Is this so-called " herd law " of 1870 a law of a general nature? A " law of a general nature," and a " public" or " general law," is the same. 9 Wis., 297; 5 Iowa, 3; Sedgw. on Stat. L., 31; 9 Maine, 45; 6 Ohio St., 269. " To constitute a statute a public act, it is not necessary it should extend to all parts of the State. It is a public act, if it extends equally to all persons within the territorial limits described in the statute." 6 Porter, (Ind.) 281.

3. Said act of 1870 is unconstitutional, by reason of its own provisions as contained in § 5 of said act, which provides for a repeal, or rather a nullification of the statute, " Nothing short of a statute can repeal a statute." Sedgw. Stat. and Const. L., 121. If the act of 1870 is a statute it cannot be repealed in the manner provided for in § 5 of said act. Legislative power to make or repeal laws cannot be delegated. Cooley Const. Lim., 116, 120, 124; Sedgw. Stat. Const. L., 149, 164, 177; 1 Kent's Com. 495, note 1; 1 Ohio St., 77.

The opinion of the court was delivered by

BREWER, J. : On the 27th of September, 1870, Charles Rodgers, defendant in error, filed his amended petition in the district court of Saline county, in which he charged that on the first day of June preceding, defendant's stock entered upon his premises, situated in said county, and trampled upon and consumed wheat growing thereon, to his great damage; and for which damage he prayed judgment. Darling's answer, not denying the in-

jury, alleged that said stock was running at large, and
that there was no fence around said premises to prevent
or hinder the said animals from going upon them. A
demurrer was filed to this answer, which was sustained.
Judgment was afterwards rendered in favor of Rodgers
for the amount claimed, and now Darling brings the case
here for review. The error complained of is the sustain-
ing of the demurrer to the answer.

Though the amount in controversy is small, and the
case itself comparatively unimportant, yet the question it
involves is one of exceeding nicety and difficulty. It in-
volves the constitutionality of ch. 115 of the laws of 1870,
commonly known as the Herd Law. This statute it is
claimed is in conflict with sec. 17, of art. 2 of the State
constitution. That section reads as follows :

" Sec. 17. All laws of a general nature shall have a
uniform operation throughout the State; and in all cases
where a general law can be made applicable, no special
law shall be enacted."

In 1868 the legislature passed a law of a general nature,
entitled "An act in relation to fences," which stands as
ch. 40, Gen. Stat., p. 486. This act declared what should
constitute a legal and sufficient fence, and re-
quired all fields and inclosures to be inclosed
therewith. It further provided, in case cattle should
break into any inclosure and do damage, a mode of as-
certaining whether the fence inclosing was a legal fence,
and, if legal, what amount of damage had been done by
the cattle. It in effect so far modified the common law
that no action would lie for injuries done on real estate
by trespassing cattle * unless such real estate was inclosed

1. FENCE LAW;
ch. 40, 1868,
construed.

[ * IN case of *Wells v. Beal,* decided at January Term, 1872, (which was an action of
trespass for injuries done by swine,) this court decided that—"In a township in which the
hog law has not been suspended, it is no defense to an action for damages done to a crop
by hogs suffered to run at large that the crop is not inclosed by a legal and sufficient
fence." In this case, (*Wells v. Beal,*) plaintiff in error relied upon the case of *Larkin v.*

with a sufficient fence. *U. P. Rly. Co. v. Rollins*, 5 Kas., 167. This law being of a general nature had a uniform operation throughout the State. There was in the act no attempt indeed to limit its operation; and if said ch. 40 were the only act in force the demurrer was improperly sustained, for under this statute the facts alleged in the answer constituted a complete bar to any recovery for the damage done by these trespassing cattle of the plaintiff in error. But in 1870 the "Herd Law" above referred to was passed. The first two sections of that act are as follows:

"SEC. 1. The counties of Saline, Ottawa, Washington, Cloud, Cherokee, and McPherson shall be exempt from the provisions of an act entitled 'An act in relation to fences,' for the period of five years from the date of the approval hereof.

"SEC. 2. During said period of time, if the owner of stock of any description shall allow the same to trespass upon the premises of another person, such owner shall be liable in damages to the person whose property is so injured."

Unquestionably if this latter act be valid, the ruling of the court below is correct. In the case of *The State ex rel. Johnson v. Hitchcock*, 1 Kas., 178, this court construed the latter clause of the constitutional section above quoted as in its nature directory rather than mandatory, and as

2. Constitutional Law; general laws must have a uniform operation. leaving a discretion to the legislature to determine whether a desired end "can or cannot be expediently accomplished by a general law."

But such construction cannot be applied to the first

---

*Taylor*, 5 Kas., 433, (opinion, pp. 445, 446;) but the court held that the word "stock," there used, was used with respect to trespasses committed by horses, mules, neat cattle, etc., (the trespassing animals in *Larkin v. Taylor* being horses and neat cattle,) and were not intended to include *swine*, special provisions being made by art. 7, §§ 46 to 54, of the act relating to stock, (ch. 105, Gen. Stat., 1868,) in regard to trespasses committed by such animals. Hence, the word "cattle," in the text, does not include *swine*, being used in a sense less comprehensive than WEBSTER'S definition: "CATTLE, *n.*, *pl.*: Domestic quadrupeds collectively, especially those of the bovine genus, sometimes also including sheep, goats, horses, mules, asses, and swine."—REPORTER.]

clause of the section. The language is plain and positive: "All laws of a general nature *shall* have a uniform operation." No discretion is left to the legislature or the courts. Whether it be expedient to limit the operation of such a law is a question they may not ask. Pass a law of a general nature, and without any words of application, and it operates uniformly throughout the entire State. Pass such a law and attempt to limit its operation, and either the law or the limitation will be void. Now, the fence law of 1868 is without question a law of a general nature, and, (prior at least to the herd law of 1870,) of uniform operation throughout the State. No part of it is in terms repealed by the "herd law." It is only by implication repealed so far as it affects certain specified localities, and these only for a term of years. If the latter be valid the former no longer has a "uniform operation throughout the State." That which was a general law, and had the required uniformity of operation, still remains a general law, but is deprived of such uniformity. The constitutional provision would thus be nullified. Now, whatever might be the rule if the attempt to limit the operation of a statute was a part of the statute itself, when the attempted limitation is sought by a separate act the latter must fall while the former stands. 3. Herd Law of 1868 is unconstitutional and void. Tested by this rule the fence act of 1868 is valid, the herd law of 1870 void. No fairer illustration of the evil sought to be prevented by this constitutional provision can be presented than is furnished by these two laws. For they prescribe general rules of property and conduct, diametrically opposed to each other, each to have universal application within a given locality. A. and B. own adjoining farms, but in different counties. A.'s farm is in one of the counties named in the herd law. B.'s is not. Each owns stock. The farm

of each is unfenced. B.'s stock strays upon A.'s farm and does great damage to his crop. B. is compelled to pay A. for all such damage. A.'s stock strays upon B.'s farm and does like damage; yet A. is under no obligation to pay for it, and B. must suffer the loss. It is *damnum absque injuria.*

But it is contended that the two clauses of this constitutional section must be construed together, and the positive requirements of the first clause considered as limited by the discretion given in the latter; that every special law operates as a limitation upon some general rule either of statute or common law; that power to pass special laws carries with it the power to limit the operation of general by special laws. Whether this be correct or not, is immaterial to this case, because, as it seems to us, the Herd Law of 1870 is a law of a general nature equally with the fence law of 1868. Each imposes a rule of property which applies equally to all property that can be affected by such a rule. Each imposes obligations which fall equally upon all members of a class of citizens. In fact there is no element wanting in the one which in the other tends to show that it is a law of a general nature except the extent of the locality over which it is intended to operate. But if the legislature can by simply specifying the locality over which a law shall operate change a law of a general to one of a special nature, the obligations of this valuable constitutional provision are weaker than a rope of sand. We cannot so limit it.

The judgment of the court below must be reversed, and the cause remanded with instructions to overrule the demurrer.

All the Justices concurring.